Case 4:24-cv-00247   Document 18   Filed on 03/31/25 in TXSD   Page 1 of 10

United States District Court
Southern District of Texas
**ENTERED**
March 31, 2025
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| In re MICHELE ANITA DIBASSIE, § | |
| § | |
| Debtor. § | |
| § | CIVIL ACTION NO. 4:24-CV-247 |
| § | |
| MICHELE ANITA DIBASSIE, § | ADVERSARY CASE NO. 23-3063 |
| § | |
| Appellant. § | |

# MEMORANDUM OPINION AND ORDER

This is a bankruptcy appeal. The bankruptcy court entered a nondischargeable judgment in the amount of $299,980.98 in favor of appellee Christopher Reeves ("Reeves") under 11 U.S.C. § 523(a)(4) ("Section 523(a)(4)"). *See* Southern District of Texas bankruptcy case number 23-3063 at docket entries 54 and 75. The bankruptcy debtor, appellant Michele DiBassie ("DiBassie"), has appealed that judgment. The Court **AFFIRMS**. All pending motions are **DENIED AS MOOT**.

## I. BACKGROUND

Reeves sued DiBassie under Section 523(a)(4), which excepts from discharge any debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny[.]" 11 U.S.C. § 523(a)(4). After a bench trial, the bankruptcy court found that DiBassie had embezzled money from a limited liability company called SCS Repair Group, LLC ("SCS") that Reeves and DiBassie co-owned. *See* Southern District of Texas bankruptcy case number 23-3063 at docket entry 54, page 12. After accounting for offsets to which DiBassie was entitled, the bankruptcy court awarded Reeves half the money that

DiBassie had embezzled. *See* Southern District of Texas bankruptcy case number 23-3063 at docket entry 54, pages 11–13.

It is apparent from the record that nearly every material fact in this case, up to and including the authenticity of basic foundational documents, was hotly contested. For instance, about one of the most critical documents in the case, a limited liability company agreement, the bankruptcy court wrote:

> The Limited Liability Company Agreement of SCS Repair Group, LLC (the "Agreement")[1] that forms, and one would assume, controls the operation of SCS Repair Group, LLC is highly disputed. The Court has seen five versions of this Agreement, both signed, unsigned, signed with a forged [electronically placed] signature and with or without attachments.
> *See* Southern District of Texas bankruptcy case number 23-3063 at docket entry 54, pages 2–3 (bracketed phrase in the bankruptcy court's opinion).

The relative credibility of the witnesses was consequently crucial to the bankruptcy court's decision, and who was telling the truth was sometimes difficult to ascertain. In its thorough 14-page opinion, the bankruptcy court wrote that "the evidence entered [at trial] was highly contradictory[;]" that "[n]o named party was . . . wholly truthful" at trial; and that "most of the witnesses . . . held a financial bias." *See* Southern District of Texas bankruptcy case number 23-3063 at docket entry 54, page 3.

That said, Reeves came out a clear winner in the bankruptcy court's estimation. The bankruptcy court, which had stricken DiBassie's pleadings for "longstanding discovery abuses" and failing to comply with the bankruptcy court's orders, found that DiBassie "forged numerous documents" and "had no credibility[.]" *See* Southern District of Texas

---

[1] As the bankruptcy court did, this Court will refer to the SCS Repair Group, LLC limited liability company agreement as "the Agreement."

bankruptcy case number 23-3063 at docket entry 54, pages 3–4. The bankruptcy court also expressed evident irritation with DiBassie's daughter, Emilynn DiBassie ("Emilynn"), who was a key witness for DiBassie. According to the bankruptcy court, Emilynn "claimed the Fifth Amendment on numerous occasions" at a motion hearing and then, at trial, offered what the bankruptcy court called "revisionist testimony" that "was clearly intended to protect her mother" and "c[ould not] be believed." *See* Southern District of Texas bankruptcy case number 23-3063 at docket entry 54, page 4. At bottom, the bankruptcy court succinctly stated, DiBassie and Emilynn "simply were not credible." *See* Southern District of Texas bankruptcy case number 23-3063 at docket entry 54, page 3.

After exhaustively reviewing the pertinent evidence in its opinion, the bankruptcy court found that Reeves and DiBassie, the only two members of SCS, each owned half of the company. *See* Southern District of Texas bankruptcy case number 23-3063 at docket entry 54, page 2. The bankruptcy court made that finding after noting that the only valid version of the Agreement "d[id] not contain any attachments which purport[ed] to control either a division of ownership or a requirement of capital contributions." *See* Southern District of Texas bankruptcy case number 23-3063 at docket entry 54, page 3.

The bankruptcy court further found that DiBassie "stole[]" $696,295.97 by making improper transfers from SCS to another entity, Structural Concrete Systems, LLC ("Structural Concrete"), that DiBassie wholly owned. *See* Southern District of Texas bankruptcy case number 23-3063 at docket entry 54, page 3. After accounting for offsets that it found appropriate, the bankruptcy court awarded Reeves half the money that

DiBassie had embezzled. *See* Southern District of Texas bankruptcy case number 23-3063 at docket entry 54, pages 11–13. This appeal followed. (Dkt. 1).

## II. BANKRUPTCY APPEALS

Federal district courts have jurisdiction to hear appeals from the final judgments of bankruptcy judges. 28 U.S.C. § 158(a). An appeal to a district court from the bankruptcy court "shall be taken in the same manner as appeals in civil proceedings generally are taken to the courts of appeals from the district courts[.]" 28 U.S.C. § 158(c)(2). This Court reviews the bankruptcy court's legal conclusions *de novo* but may only disregard a fact finding made by the bankruptcy court if that fact finding is clearly erroneous. *In re Perry*, 345 F.3d 303, 309 (5th Cir. 2003). "A factual finding is not clearly erroneous if it is plausible in the light of the record read as a whole." *In re Ramba, Inc.*, 416 F.3d 394, 402 (5th Cir. 2005). The Fifth Circuit has emphasized that, under the "clearly erroneous" standard, this Court "may [not] weigh the evidence anew" and may only set aside the bankruptcy court's fact findings if it is "left with the definite and firm conviction that a mistake has been committed." *In re Perry*, 345 F.3d at 309 (quotation marks omitted).

## III. ANALYSIS

On appeal, DiBassie raises four arguments: (1) Reeves lacked standing to bring his embezzlement claim; (2) the bankruptcy court's finding that Reeves owned 50% of SCS contradicts the plain language of the Agreement; (3) Reeves was not the owner of the embezzled property; and (4) there is no evidence showing that DiBassie acted with fraudulent intent. (Dkt. 14 at pp. 19–31). The Court disagrees with DiBassie's contentions.

*—Standing*

DiBassie first contends that Reeves lacked standing to bring an embezzlement claim under Section 523(a)(4). (Dkt. 14 at p. 19). According to DiBassie, "the claims made by Reeves are held solely by [SCS] and cannot be pursued by Reeves as he does not qualify as a creditor under the bankruptcy code." (Dkt. 14 at p. 19). The Court disagrees.

The bankruptcy code's definition of "creditor" includes an "entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor[.]" 11 U.S.C. § 101(10)(A). The bankruptcy code's definition of "claim" includes a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured[.]" 11 U.S.C. § 101(5)(A). The Supreme Court has noted that "Congress intended by this language to adopt the broadest available definition of 'claim.'" *Johnson v. Home State Bank*, 501 U.S. 78, 83 (1991).

As previously mentioned, Section 523(a)(4) excepts from discharge any debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny[.]" 11 U.S.C. § 523(a)(4). Federal common law defines "embezzlement" for the purposes of Section 523(a)(4). *In re Powers*, 261 Fed. App'x 719, 723 (5th Cir. 2008); *see also Matter of Miller*, 156 F.3d 598, 602–03 (5th Cir. 1998). The Supreme Court has long defined "embezzlement" as "the fraudulent appropriation of property by a person to whom such property has been intrusted, or into whose hands it has lawfully come." *Moore v. United States*, 160 U.S. 268, 269 (1895).

DiBassie asserts that Reeves does not meet the definition of "creditor" because "Reeves has no direct financial stake in his claim. His claim is completely dependent upon an accurate distribution of the assets of [SCS]." (Dkt. 14 at p. 21). The Court finds this argument unconvincing. The bankruptcy court found that Reeves was a 50% owner of a two-member limited liability company and that the other 50% owner embezzled funds from the company. Under the bankruptcy court's fact findings, the money that DiBassie took was half hers and half Reeves's, which is why the bankruptcy court awarded Reeves only half of what DiBassie actually took. The Court concludes that the bankruptcy court did not err in concluding that Reeves had standing to pursue an embezzlement claim under Section 523(a)(4). "As [Reeves] was an owner of [SCS, he] had an interest in th[e] funds" that DiBassie embezzled. *In re Humphries*, 516 B.R. 856, 870–72 (Bankr. N.D. Miss. 2014) (finding that one 50% owner of a closely held corporation had embezzled funds from the company and further finding that an amount equal to half of the embezzled funds constituted a nondischargeable debt to the other 50% owner under Section 523(a)(4)).

—*The language of the Agreement*

DiBassie next contends that the bankruptcy court's finding that Reeves owned 50% of SCS contradicts the plain language of the Agreement. (Dkt. 14 at p. 21). DiBassie argues that the Agreement instead unambiguously provides that Reeves only owned 25% of SCS and that the other 75% was owned by Emilynn, DiBassie's daughter. (Dkt. 14 at pp. 21–25). The Court disagrees with DiBassie's assertion that the Agreement is unambiguous. The bankruptcy court did not err in concluding that the Agreement was ambiguous regarding Reeves's ownership share.

The parties agree that Texas contract law governs interpretation of the Agreement. (Dkt. 14 at p. 22; Dkt. 15 at p. 22). Courts applying Texas law decide whether a contract is ambiguous "by examining the contract as a whole in light of the circumstances present when the contract was entered." *Anglo-Dutch Petroleum International, Inc. v. Greenberg Peden, P.C.*, 352 S.W.3d 445, 449–50 (Tex. 2011). "If, in the light of surrounding circumstances, the language of the contract appears to be capable of only a single meaning, the court can then confine itself to the writing." *Sun Oil Co. (Delaware) v. Madeley*, 626 S.W.2d 726, 731 (Tex. 1981). But "if the contract is subject to two or more reasonable interpretations after applying the pertinent rules of construction, the contract is ambiguous, creating a fact issue on the parties' intent." *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex. 2003).; *see also Coker v. Coker*, 650 S.W.2d 391, 393–94 (Tex. 1983) ("A contract . . . is ambiguous when its meaning is uncertain and doubtful or it is reasonably susceptible to more than one meaning."). When a contract is ambiguous, the Court may consider the parties' interpretations and admit extraneous parol evidence to determine the true meaning of the instrument. *National Union Fire Insurance Co. of Pittsburgh, PA v. CBI Industries, Inc.*, 907 S.W.2d 517, 520 (Tex. 1995).

DiBassie bases her argument that the Agreement is unambiguous on the Agreement's mention of an "Exhibit A attached hereto." (Dkt. 14 at pp. 23–24). "Exhibit A" purportedly sets forth an ownership distribution of 25% for Reeves and 75% for Emilynn. (Dkt. 14 at p. 24). However, the circumstances surrounding the Agreement's formation render DiBassie's argument untenable. As previously mentioned, the bankruptcy court examined five different versions of the Agreement. Some were signed; some were

not. Some had attachments; some did not. At least one, the bankruptcy court found, had a forged signature. *See* Southern District of Texas bankruptcy case number 23-3063 at docket entry 54, pages 2–3. Moreover, the record contains two different ownership distribution breakdowns, each attached to a different version of the Agreement and each labeled "Exhibit A." (Dkt. 15-1 at pp. 77, 97). The bankruptcy court found that only one of the five competing versions of the Agreement was a valid "wet signature copy[.]" *See* Southern District of Texas bankruptcy case number 23-3063 at docket entry 54, page 3. That version of the Agreement, although it refers to an "Exhibit A attached hereto[,]" contains no attachments whatsoever. *See* Southern District of Texas bankruptcy case number 23-3057 at docket entry 128-2. As the bankruptcy court put it, "the Agreement does not contain any attachments which purport to control either a division of ownership or a requirement of capital contributions." *See* Southern District of Texas bankruptcy case number 23-3063 at docket entry 54, page 3. Under the circumstances, the bankruptcy court did not err in concluding that the Agreement was ambiguous regarding Reeves's ownership share.

Since the Agreement was ambiguous, the bankruptcy court was allowed to consider the parties' interpretations and extraneous parol evidence. After considering that evidence, the bankruptcy court found that Reeves was a 50% owner of SCS. To the extent that DiBassie challenges that fact finding, the Court concludes that the finding was not clearly erroneous.

###### —Ownership

DiBassie next contends that Reeves was not the owner of the embezzled property and that, instead, SCS owned that property. (Dkt. 14 at pp. 25–26). This is DiBassie's standing argument in different clothing, and the Court rejects it for the same reasons.

###### —Fraudulent intent

Finally, DiBassie contends that there is no evidence showing that she acted with fraudulent intent. (Dkt. 14 at pp. 30–31). The Court disagrees.

"Fraudulent intent may be inferred from the conduct of the Debtor and from circumstances of the situation." *In re Holdaway*, 388 B.R. 767, 779 (Bankr. S.D. Tex. 2008). The bankruptcy court made several discrete fact findings that, taken together, support a finding that DiBassie acted with fraudulent intent. For instance, the bankruptcy court found that DiBassie "forged numerous documents by the placement of Reeves's electronic signature on documents without authorization, including on documents he had never seen." *See* Southern District of Texas bankruptcy case number 23-3063 at docket entry 54, page 3. The bankruptcy court further found that, "as the person who controlled passwords on Reeves's [SCS] email and cloud account, [DiBassie] manipulated [Reeves's] email and access, ending when she without authority changed his email password." *See* Southern District of Texas bankruptcy case number 23-3063 at docket entry 54, pages 3–4. Most compellingly, the bankruptcy court found that DiBassie provided financial records that were "covered in large falsehoods" and "incomplete[,]" including a "materially false" profit and loss statement containing a long list of "made-up expenses" designed to conceal DiBassie's embezzlement. *See* Southern District of Texas bankruptcy case number 23-

3063 at docket entry 54, pages 10–11. These discrete fact findings are not clearly erroneous, and neither is the bankruptcy court's ultimate finding that DiBassie acted with fraudulent intent.

IV. **CONCLUSION**

The Court **AFFIRMS** the bankruptcy court's judgment. All pending motions are **DENIED AS MOOT**.

SIGNED at Houston, Texas on March 31, 2025.

GEORGE C. HANKS, JR.
UNITED STATES DISTRICT JUDGE